UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>Juan Rivera,<br><br>Defendant. | 07-cr-430 (JSR)<br><br>FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW |

JED S. RAKOFF, U.S.D.J.

On October 16, 2007, defendant Juan Rivera, having been found guilty of conspiracy to commit Hobbs Act Robbery, was sentenced to 151 months' imprisonment and three years of supervised release. ECF No. 16. Rivera was released from custody in April 2018 to begin his term of supervised release. Subsequently, the Court twice revoked defendant's supervised release after he admitted to violating the conditions of his supervision, both times for offenses involving the use of heroin. See ECF Nos. 26, 39. On February 4, 2020, Rivera commenced his third term of supervised release. On July 13, 2021, the Probation Office initiated proceedings against Rivera, specifying six violations of supervised release, all of which arose from an incident resulting in defendant's arrest on July 7, 2021. On August 17, 2021, Probation added a seventh specification.

The seven specifications are as follows:

Specification 1 charges defendant with violating New York Penal Law § 220.39(1), Criminal Sale of a Controlled Substance in

1

the Third Degree, when he knowingly and unlawfully sold a narcotic drug.

Specification 2 charges defendant with violating New York Penal Law § 220.16(1), Criminal Possession of a Controlled Substance in the Third Degree, when he knowingly and unlawfully possessed a narcotic drug with the intent to sell it.

Specification 3 charges defendant with violating New York Penal Law § 220.44(2), Criminal Sale of a Controlled Substance in or Near School Grounds, when he knowingly and unlawfully sold a controlled substance in violation of, among other things, New York Penal Law § 220.39(1), and that sale took place within one thousand feet of a school.

Specification 4 charges defendant with violating New York Penal Law § 220.03, Criminal Possession of a Controlled Substance in the Seventh Degree, when he knowingly and unlawfully possessed a controlled substance.

Specification 5 charges defendant with violating New York Penal Law § 205.30, Resisting Arrest, when he attempted to prevent a police officer from effecting an authorized arrest of himself or another person.

Specification 6 charges defendant with failing to notify his Probation officer within 72 hours of being arrested by a law enforcement officer, in violation of the conditions of his supervised release.

Specification 7 charges defendant with using cocaine, a controlled substance, in violation of the conditions of his supervised release.

Although Rivera admitted to Specification 7, using cocaine, he denied the six other specifications. Accordingly, the Court conducted an evidentiary hearing on September 15, 2021 in which the Court heard testimony from three New York City Police Department ("NYPD") detectives and defendant's Probation officer, received stipulated testimony from two more NYPD detectives and a criminalist with the NYPD Police Laboratory, and received into evidence a number of documents and physical items, including recovered currency and narcotics. Subsequent to the hearing, the Court also received written submissions from the parties. See ECF Nos. 48, 49.

The Government bears the burden to prove by a preponderance of the evidence that defendant violated a condition of his supervised release. See 18 U.S.C. § 3583(e)(3); United States v. Carthen, 681 F.3d 94, 99-100 (2d Cir. 2012) ("[A]t a VOSR hearing, the alleged violation[s] of supervised-release need only be proven by a preponderance of the evidence."). Based on the parties' submissions and the evidence presented, including the Court's assessment of the witnesses' demeanor and credibility, the Court finds the Government has met its burden with regard to all six specifications. The reasons for these rulings follow.

I.      **Specifications 1-5**

Through live and stipulated testimony, five NYPD detectives specializing in narcotics investigations provided a consistent and credible account of the events leading up to defendant's arrest on July 7, 2021. Taken collectively, the testimony – as corroborated by the physical evidence – proves that (1) defendant and his associate William Morales knowingly and unlawfully sold fentanyl to an undercover officer; (2) the sale took place within 1,000 feet of a school; (3) defendant subsequently fled and resisted arrest; and (4) defendant was, incident to his arrest, found in possession of both fentanyl and cocaine.[1]

First, the Government has sufficiently proved that defendant knowingly participated in an unlawful sale of fentanyl on July 7, 2021. According to the stipulated testimony of the undercover officer, the undercover officer approached Morales, asked to purchase heroin, and handed Morales prerecorded currency. See GX 13 ¶ 1. Detective Jeremy Rodriguez testified that after that exchange, he observed Morales walk around the corner to defendant, hand currency to defendant, and receive in return something small enough to fit within a clenched hand. See Transcript of the

---

[1] Under New York State law, both fentanyl and cocaine are classified as narcotic drugs and controlled substances. See N.Y. Penal Law § 220.00(5), (7); N.Y. Pub. Health Law § 3306.

September 15, 2021 Hearing ("Tr.") at 18-20, 32-33. Detective Rodriguez further testified that he observed Morales return to the undercover officer and hand the undercover officer what was later determined to be three glassine envelopes containing fentanyl. See Tr. at 20-21; GX 7; GX 10; GX 13 ¶¶ 1, 3(a); GX 19. The glassine envelopes, which were admitted into evidence, measured 2 cm x 3 cm when closed and approximately 3 cm x 7 cm after being fully unfolded — that is, small enough to fit in a single hand. See ECF. No. 50 at 2.

The testimony of the undercover officer and Detective Rodriguez supports the inference that the drugs delivered to the undercover by Morales had been provided to Morales by defendant. This conclusion is further corroborated by the physical evidence recovered incident to Morales's and defendant's respective arrests. Specifically, glassine envelopes containing fentanyl were recovered from both Morales and defendant, see Tr. at 47-50; GX 8; GX 9; GX 11; GX 13 ¶¶ 2, 3(b)-(c); GX 14; GX 20, and a portion of the prerecorded currency, which had been handed to Morales by the undercover, was recovered in the immediate vicinity of where defendant was arrested — seemingly tossed by defendant as he sought to run from the arresting officers, Tr. at 62-64; GX ¶ 1; GX 18.

On cross-examination, defense counsel sought to cast doubt on Detective Rodriguez's testimony by drawing attention to the fact

that the detective was sixty feet away when he saw Morales interact with defendant and, as a result, could not see what object Morales handed to defendant. See Tr. at 19-20, 31-33, 43-44. While it is true that none of the Government's witnesses directly observed defendant giving the drugs to Morales, the aforementioned circumstantial evidence clearly supports the inference that defendant did, in fact, knowingly sell the drugs to the undercover officer, using Morales as a middleman.

Second, the Government established, through uncontroverted evidence, that defendant's sale of narcotics took place within 1,000 feet of a school. Specifically, Detective Rodriguez identified on a map the location of the events described above as well as the location of two schools in the area, P.S. 63 Author's Academy and Mott Hall Charter School. See id. at 17-23. Review of that map, admitted into the evidence as Government Exhibit 12, shows that the sale took place approximately one city block — i.e., less than 1,000 feet — from the two schools identified by Detective Rodriguez's testimony.

Third, the testimony presented at the hearing established that defendant resisted arrest. As Detective James Causa testified, when one of the officers identified himself to defendant, defendant initially fled on foot, but then, after the officer gave chase, the defendant "turned around, put his fists up in an aggressive way, and started cursing" at the officer. Tr. at

6

61. A struggle ensued, resulting in injuries to defendant, including to his eye, after which defendant was placed under arrest. See id. at 61-62.[2] Detective Rodriguez corroborated this account, testifying that he saw defendant run when the officers attempted arrest. See id. at 21-22.

Fourth, the Government sufficiently proved that defendant was found, at the time of his arrest, in possession of both fentanyl and cocaine. Detective Paul Zaino testified that during his search of defendant, he recovered items from defendant's front pants pocket and that those items were invoiced under NYPD Property Clerk Invoice Number 2001054099. Tr. at 47-50. As stipulated by the parties, the items listed on Invoice Number 2001054099 were determined by the NYPD Police Laboratory to contain both fentanyl and cocaine. See GX 9; GX 13 ¶ 3(c); GX 14.

---

[2] In its submission, the defense argues that Detective Causa's testimony should not be credited because he was "evasive[]" and claimed not to recall certain details, particularly as to the nature of defendant's injuries. See ECF No. 49 at 4. However, the Court disagrees with the defense's characterization of Detective Causa's testimony and finds it credible. In particular, contrary to the defense's suggestion that the detective denied any recollection of his conversation with an Assistant U.S. Attorney on September 14 regarding the nature of the injuries, the Court finds that Detective Causa forthrightly testified that he had told the Government that he did not know what sort of injury was sustained but that "[i]t could have been a broken eye socket." Tr. at 71. Nor does the Court agree with the defense's suggestion that the fact that the officers did not obtain video surveillance from a camera near the location of defendant's arrest undermines the credibility of the officers' testimony.

7

The defense does not challenge Detective Zaino's testimony or the results of the Police Laboratory's testing. Instead, on cross-examination, defense counsel sought to draw attention to a brief period, prior to conducting his search, when the detective left defendant's presence. See Tr. at 56. However, there is no evidence suggesting that the items recovered from defendant were tampered with during this brief interim. As such, the Court finds that it is established that defendant knowingly possessed fentanyl and cocaine.

Accordingly, based on the evidence discussed above, the Court concludes that the Government has proved, by the preponderance of the evidence, that defendant committed the violations set forth in Specifications 1 through 5.

## II. Specification 6

At the evidentiary hearing, defendant's Probation officer, Officer Adam Pakula, testified that defendant did not notify Probation of his July 7, 2021 arrest within 72 hours, in violation of one of the conditions of supervised release. Specifically, Officer Pakula testified that he first learned of defendant's arrest through an internal notification system and did not receive any communication from defendant until July 12, 2021 — five days after the arrest — with that contact having been initiated by Officer Pakula rather than defendant. See Tr. at 76-78. Officer Pakula further testified that defendant had previously

8

acknowledged in writing that he understood the conditions of his supervised release. See id. at 76. Additionally, Officer Pakula testified that he had provided defendant with his contact information on numerous occasions. See id. at 79-80. Accordingly, the uncontroverted testimony established that defendant committed the violation set forth in Specification 6.

## CONCLUSION

In sum, for the foregoing reasons, the Court finds that Rivera committed the violations set forth in Specification 1 through 6. Sentencing on the seven specifications charged by Probation, including Specification 7, is set for October 22, 2021 at 2:00pm.

SO ORDERED.

Dated:   New York, NY

October 7, 2021

JED S. RAKOFF, U.S.D.J.